Okay, the next argued case is number 16, 2736, in Re Nomula. Mr. Mahler. May I please have the floor? My name is Jindal Mahler. I go by J.D. I'm standing here speaking on behalf of my client, before he's mentioned, which is an MP. In the blue brief at 12, you argue there's a difference between search queries and search results. Yes. Why is that material to our obviousness? It's very different. You're referring to 2023, right, Your Honor? Basically, if, for example, you're searching against something that is just a suggestion, your consideration is very different. Like, for example, you may have a time constraint, you may want to display the results very quickly, but on the other hand, if you're searching against something that a user submitted, that's totally different, given that you can have more resources to deal with, you don't have as much time constraint that you have, and so you would most likely do a much better search. And for 2023... What evidence shows those differences? Well, I mean, that's... You know, I think that should be able to find in the prior, and I can supply supplemental research for... I'm not asking for supplemental research. But anyway, they are just different subject matter, because... No, no, no, no, no, no, no. You don't get to say to a judge, but anyway, when the judge is asking you for evidence in the record. You can say, there isn't any. Or you can tell me where it is. Oh, well, it's just something that those of you in the art knows. It's just something, you know, it's not in the record, because... So, a person of skill in the art would know it. Oh. So, is there an affidavit to that effect? Well, not at this point. But, can I make a point on this? You know, the reason that the search results in Claim 23 is different from the search results that I believe is referring to, is different, is that the search results actually search against the suggested query. So, it still displays the vicinity of the suggestion list, which means that the user doesn't have to select it. So, technically, it's still a suggestion, not something that the user has submitted. So, when we're looking at, I'm going to call this reference Raxhit. Okay. All right. So, there's a figure 5. Yeah. Box 504. Yeah. And then, in the spec of Raxhit, it says Box 504. It displays those websites, 510, that have been highest ranked against the query suggestion. You're saying, in your view, those websites, 510, that are being displayed, that are the highest ranked against the query suggestion, those are not search results, in your view? Well, they're not the search results referred in the claim. The search results referred in the claim are search results against a query actually submitted by a user. You know, so, you know, we've got, you know, we've got substantive meaning to the claim language. That's what I'm referring to. Essentially, the search results that you refer to, that I'm referring to in the 504, is fundamentally distinct from the search results displayed as a result of the user submitting the search query. Is the creating limitation in Claim 19 the essential step that you keep referring to? Yes, it is. And that's evident, you know, when the specification as a whole is viewed. I can also give an example as to why it's so essential. Like, for example, in the specification it describes, you know, a lot of the searches using conventional search query suggestions is not very relevant to that very user who's trying to make a search. One example is that without the technology, if the user type jobs, okay, so what happens is that the search engine will look for what maybe other people that submit the same word job may look for, right? So they will come up with a list of search query suggestions. But in this, you mentioned, right, the extra step is that it goes to a social networking platform to exactly search for the social networking information of that user. For example, the friends of that user. You know, noting that companies usually always come very closely related to that term jobs, so we will actually put the friends of companies at the top of the search query list. The inventive concept here is the idea of supplementing a search engine with a user's social networking information in order to, I guess, improve the search query suggestions. So you're supplementing based on, in part, a particular kind of information that's specific to the user. Yes. And it was already known in the art to use information specific to the user to supplement figuring out search queries because it was already known to use the location of a user's terminal to help figure out what would be a good set of search query suggestions. Is that right? I don't know about that, but that's... Well, your specification says that. The specification says location, but this is specifically about using... For example, the IP address, is that what you're referring to? Right. Well, but that's not the social networking information. Oh, I understand it's different, but it's nevertheless information that's person-specific, computer terminal-specific. Well, that can increase the relevancy, but that wouldn't have the kind of relevancy that I'm referring to in connection with that search on the term jobs. Because, for example, in that search without invention, of my trans-invention, the friends' companies will be actually at the top of the list of that search query suggestion list. But on the other hand, without this invention, the conventional search would have been just looking for what other people may search for jobs, and they would just come up with something that you list in that area. I guess I'm trying to figure out whether this is really a non-obvious advance in light of Rackset, given that Rackset already has the insight to combine a search engine server with a social networking server, and then applying a user's social networking information in order to figure out what would be, to provide a user ideal search query suggestions. I understand there's a difference between the reference and what your invention is, but already we're getting into the territory of relying in part on a user's social networking information to help guide the user in trying to choose ideal search query suggestions for that user. Yes, there's a big distinction. In Rackset, the social networking information we're using is exclusively used to decorate or provide additional information for a search query suggestion that's already created. It's not involving the creation process. Right, but in the end, both your invention, your client's invention, and Rackset, what are they trying to do? What is the ultimate goal? The ultimate goal is to try to help a user along with offering search query suggestions that the user is hopefully going to like, and both use social networking information in a way to help guide the user. I know you're saying that's too broad, but we have to start somewhere, and that seems like a decent enough starting step before we drill down. Well, that's not the subject matter of the claim. The purpose of the claim is specifically to increase the relevancy of that query text. Now, for example, try to use an impression of some kind of feedback on a search query suggestion that's already created. So that's the key to distinction. For example, using Rackset's scheme, it's a creation of the search query text suggestion. It's still exactly the same as the conventional. So in this jobs case that I just described to you, in the Rackset scheme, it's still going to be jobs, blah, blah, blah, based on some other people's preferred search query that's gleaned from the public. But it is not something that's very personal, for example, to the user. For example, the user's friends' companies, where they work for, which will be up here at the top. So that's a key distinction. And that applies to the secondary reference, Williams, as well. Okay. All right, let's hear from the office. I'll save the rest of your time. Ms. Rashid? May I please report? There is no real daylight between Nomiola's claims here, which are so general, and the prior Rashid reference. Rashid clearly teaches using retrieved search query suggestions from the user's social network, social contacts of the user. Mr. Nomiola contends that the prior art doesn't teach the ranking limitation. What part of the prior art teaches ranking search results rather than queries, and does it matter? Well, you know, in view of the general nature of the way results is described in the, is used in the claims and then described in the specification, there is no real difference. And Rashid specifically teaches in paragraph 26, ranking websites that the user's social contacts visited after recommending those websites. So those are results of the search suggestions. Ultimately here, the claims are just broadly directed to using social network information to create search query suggestions. Rashid alone pretty much teaches the claim limitations here, and the motivation to combine or the motivation to actually alter Rashid is just based on KSR's determination that familiar elements that are combined in known ways to use predictable results are obvious, and that's exactly what is going on here, to the extent that creating a claim 19 means something more in terms of creating a new suggested search query that is different from a previously retrieved search query. Williams teaches using an N-gram language model to create new search queries. What was the evidence upon which the board relied for motivation to combine? I think on the motivation to combine, the board, on page 6 of its decision, noted that simply applying a social networking filter to Rashid's system to provide only search query suggestions that have recommendations and websites associated with them would have been obvious, and the board relies on KSR for that, to the extent that creating requires something more in terms of creating a new search query that's different from a past search query. The board relies on Williams' teaching itself, which says that creating a new search query would provide for more dynamic search suggestions, and that naturally suggests its combination with Rashid. Does Williams also teach the idea of searching a social networking database? It does. It does, Your Honor. It specifically talks about indexed networked data that could be social network data, including Facebook and Twitter as possible sources of that information, and the claims are pretty much just this concept of searching social network information and just using a different database, and Williams seems to do exactly that as well. The board adopted the examiner's final office action advisory action and the examiner's answer? It did, on page four of the board's decision, and it only addressed whatever arguments that enumerator raised, and it's a field brief. If there are no further questions, I see the rest of my time. Any more questions, anyone? Thank you, Mr. Rashid. Thank you. Mr. Mawa? Hi, Your Honor. I want to use this opportunity to address the question you just asked me regarding the epidemic. Actually, the burden is on the appellee when, for example, two subject matter are distinct. To prove that these two distinct subject matter are actually obvious with respect to each other, the burden actually is on the appellant, and the appellate did not prove that. In other words, they basically just conclusively conclude the search results referred to in the claim 23 is not distinguishable from the search results in that 504, in that figure five. So even though the appellee hasn't discharged his duty, this claim should be ruling in favor of my client. And also, I want to address the Williams case. The key for this case, the key for this invention is not really whether the social networking website as a whole is used in some kind of search engine. It's with respect to whether the social networking information of that very user who entered that query, who wanted to enter that query, was taken into consideration when dividing the search results for that user so that the user can see a list of relatively very relevant search query suggestions below that search box,  so that's the key. It's not the social networking in general. I noticed that in the police briefs, it's almost like put up a lot of small screen as to try to carve out or extrapolate something out of Raksha as if something is relevant, but it's not. For example, it says that somehow something can be readily extrapolated from Raksha's teaching, the idea of applying a social network as part of the initial query creation process, but that's way too broad. We're talking about a specific step of creating using something that's very specific to that. The claim doesn't say very much, nor does the specification about this overall broad concept of somehow using the notion of the user's social networking information. Do you then work its way into search query suggestions? It describes that result, that desire to do that, but then there aren't any details on how to go about and actually do it. Well, actually, first, the claim is very specific with respect to the social networking information that we're using. In fact, it's actually obeyed in the claim language. Second, with respect to an example, the jobs example that I just gave specifically show how using the specific social networking information by a user can actually increase the relevance. For example, without using that information, you would have just been listing query suggestions like jobs in blah, blah, blah, but using, for example, the social networking information of that very user, you will actually put his or her friends' companies at the top of the list, and that in itself shows the relevance, the increased relevancy in terms of providing the effective search query suggestion list. The example actually, in my opinion, is very specific as to the advantage of this essential step. Okay. Any more questions for Mr. Ma? More questions? Thank you. Thank you. Thank you both. The case is taken under submission, and that concludes this panel's argue cases for this morning.